**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**


GERALD DOSS,
*on behalf of the Estate of*
HERBERT WAYNE DOSS


       Plaintiff,

v.                                  CIVIL ACTION NO.  5:25-cv-00135


WILLIAM K. MARSHALL,
*individually as the Commissioner of the*
*West Virginia Division of Corrections and Rehabilitation* and
JOHN FRAME,
*individually as a Former Superintendent of Southern Regional Jail*
*and as an employee of the West Virginia Division of*
*Corrections and Rehabilitation* and
TYLER BONDS,
*individually as an employee of the West Virginia*
*Division of Corrections and Rehabilitation* and
JARED WILLIAMS,
*individually as an employee of the West Virginia*
*Division of Corrections and Rehabilitation* and
TAMARA LAGOWSKI,
*individually as an employee of the West Virginia*
*Division of Corrections and Rehabilitation* and
HAROLD WITHROW,
*individually as an employee of the West Virginia*
*Division of Corrections and rehabilitation* and
ZACHARY PEGRAM,
*individually as an employee of the West Virginia*
*Division of Corrections and Rehabilitation* and
NICHOLAS BURTON,
*individually as an employee of the West Virginia*
*Division of Corrections and Rehabilitation* and
TRACY BLEVINS,
*individually as an employee of the West Virginia*
*Division of Corrections and Rehabilitation* and
ANDREW HUDSON,
*Individually as an employee of the West Virginia*

*Division of Corrections and Rehabilitation* and
DANIEL MILLS,
*individually as an employee of the West Virginia
Division of Corrections and Rehabilitation* and
CHRISTOPHER ALLEN,
*individually as an employee of the West Virginia
Division of Corrections and Rehabilitation* and
JESSICA SPARKS, *LPN*, and
HALEY JOHNSON, *LPN*, and
ASHLEY STROUP, *LPN*, and
RACHEL BROOKS, *Medical Assistant*, and
BETH WAUGH, *LPN*, and
WEXFORD HEALTH SOURCES, INC., and
JOHN/JANE DOE WVDCR EMPLOYEES and
JOHN/JANE DOE WEXFORD HEALTH SOURCES, INC. EMPLOYEES,

            Defendants.


### MEMORANDUM OPINION AND ORDER


        Pending is Defendants John Frame, Andrew Hudson, William K. Marshall, Zachary Pegram, and Harold Withrow's Motion to Dismiss [ECF 19],[1] filed June 17, 2025, and amended June 24, 2025 [ECF 26]. Plaintiff Gerald Doss ("Plaintiff Doss"), on behalf of the estate of Herbert Wayne Doss ("Mr. Doss"), responded in opposition [ECF 31], to which Defendants Frame Hudson, Marshall, Pegram, and Withrow replied [ECF 33] on July 15, 2025.

        Also pending is Defendants Tyler Bonds, Tamara Lagowski, Jared Williams, Nicholas Burton, Daniel Mills, and Christopher Allen's Motion to Dismiss [ECF 24], filed June 18, 2025. Plaintiff Doss responded in opposition [ECF 29] to which Defendants Bonds, Lagowski, Williams, Burton, Mills, and Allen replied [ECF 30] on July 7, 2025. The matters are ready for adjudication.

---

[1] Inasmuch as Defendants Frame, Hudson, Marshall, Pegram, and Withrow filed an Amended Motion to Dismiss, the initial Motion to Dismiss [**ECF 19**] is **DENIED AS MOOT**.

**I.**

On December 10, 2021, Mr. Doss was booked into Southern Regional Jail ("SRJ"). [ECF 4 ¶ 54]. On December 11, 2021, while in booking, Mr. Doss became unresponsive and "was found lying on the floor of his cell with a bluish skin color; [. . .] shallow respirations; pinpoint, fixed pupils; and, an altered level of consciousness." [*Id.* ¶¶ 56–57]. Medical care -- chest compressions, oxygen, and Narcan -- was administered and Mr. Doss was transported to Beckley Appalachian Regional Hospital ("BARH") where health care providers "documented a chief complaint of overdose and a clinical impression of substance abuse/dependence." [*Id.* ¶¶ 58–60]. Upon admission to SRJ, Mr. Doss was placed on detoxification protocols and during his medical intake "admitted substance use and addiction disorder." [*Id.* ¶¶ 55, 62]. Although continual reference to diagnoses and problems associated with heroin and benzodiazepines are noted in Mr. Doss's medical record, Plaintiff Doss alleges Mr. Doss "was not appropriately drug screened or monitored for his Opioid Use Disorder by Wexford or the Wexford employee defendants." [*Id.* ¶¶ 55, 63]. Plaintiff Doss further alleges "Defendants did nothing to prevent [Mr.] Doss from ingesting illegal narcotics while in . . . custody" of the West Virginia Department of Corrections ("WVDCR"). [*Id.* ¶ 160].

Prior to entering SRJ, Mr. Doss was diagnosed with hypertension. [*Id.* ¶ 66]. Between November 8, 2022, and December 6, 2022, Mr. Doss requested medical care, was prescribed medications to treat his hypertension, was seen by a medical professional at the Chronic Care Clinic at SRJ, and was scheduled to undergo numerous EKGs. [*Id.* ¶¶ 64–72, 113–121]. Plaintiff Doss alleges the EKGs, which were scheduled for November 23, 2022, January 17, 2023, January 19, 2023, and February 1, 2023, never occurred. [*Id.* ¶¶ 69–72, 116–121]. Despite elevated blood pressure readings between April 22, 2022, and January 19, 2023, Plaintiff Doss alleges Mr.

Doss did not receive the scheduled weekly blood pressure checks for a period of six weeks from January 19, 2023, until his death on March 2, 2023. [*Id.* ¶¶ 73–76, 79, 122–124].

On March 3, 2023, at approximately 5:10 a.m., the inmates sharing cell B-7-7 with Mr. Doss were awoken by him falling from his bed onto the floor. [*Id.* ¶ 126]. A fellow inmate attempted to call for medical assistance, but the call button inside B-7-7 did not work. [*Id.*]. Thereafter, Mr. Doss's fellow inmates forced the cell open by throwing themselves against the cell door and thereupon using the pod call button to report the medical emergency at approximately 5:13 a.m. [*Id.*]. Defendants Blevins, Burton, Bonds, Lagowski, and Mills entered B-7-7 at approximately 5:15 a.m. and began CPR, resuscitation efforts continued by Wexford Health Sources, Inc. ("Wexford") employees who arrived shortly thereafter. [*Id.* ¶¶ 126, 130]. No oxygen was administered, and more than 12 minutes passed by the time the automated external defibrillator ("AED") was administered, at which point the AED "reported no shock advised." [*Id.* ¶ 129]. Mr. Doss was taken by ambulance to BARH, where he was pronounced dead at 6:21 a.m. [*Id.* ¶ 133]. Plaintiff Doss alleges Mr. Doss's death occurred because Defendants "failed to promptly provide necessary and reasonable medical treatment," and "fail[ed] to establish, monitor, and or/enforce policy directives and operational procedures." [*Id.* ¶¶ 174–176].

On February 28, 2025, Plaintiff Doss instituted this action on behalf of Mr. Doss's Estate. On May 9, 2025, Plaintiff Doss filed a First Amended Complaint ("Complaint"), alleging the following claims: (1) Count I – "Fourteenth Amendment Violations Under 42 U.S.C. § 1983 (Failure to Protect)," (2) Count II – "Fourteenth Amendment Violations Under 42 U.S.C. § 1983 (Deliberate Indifference To Serious Medical Needs)," (3) Count III – "Negligence," (4) Count IV – "Professional Medical Negligence," (5) Count V – "Negligent Hiring," (6) Count VI – "Negligent Supervision and Training," (7) Count VII – "Negligent Retention," and (8) Count VIII

4

– "Waiver of Governmental Immunity and Punitive Damages." [ECF 4 ¶¶ 158–244]. Count I is alleged against Defendants Commissioner Marshall, Former Superintendent Frame, and Defendants Hudson, Pegram, Withrow, Bonds, Williams, Burton, and Mills (collectively "Defendant WVDCR employees"). Count II is alleged against all defendants. Count III is alleged against Defendants Marshall, Frame, and Defendant WVDCR employees. Count IV is alleged against Wexford, and Jessica Sparks, Haley Johnson, Ashley Stroup, Rachel Brooks, and Beth Waugh (collectively "Wexford employees"). Counts V, VI, VII, and VIII are alleged against Defendants Former Superintendent Frame and Wexford.

Defendants William K. Marshall, John Frame, Harold Withrow, Zachary Pegram, and Andrew Hudson move to dismiss the Complaint pursuant to *Federal Rules of Civil Procedure* 12(b)(1), 12(b)(5), 4(e), 8 and 12(b)(6). [ECF 26]. Defendants Tyler Bonds, Jared Williams, Nicholas Burton, and Daniel Mills joined in seeking dismissal pursuant to Rule 12(b)(5). [ECF 28]. Defendants Tyler Bonds, Tamara Lagowski, Jared Williams, Nicholas Burton, Daniel Mills, and Christopher Allen move to dismiss the Complaint pursuant to Rules 12(b)(6) and 12(b)(1). [ECF 24]. Defendants Wexford and Wexford employees did not file a motion.

## II.

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"

Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678–79 (citations omitted).

As noted in *Iqbal*, the Supreme Court of the United States has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94 (citing *Twombly*, 550 U.S. at 555–56); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The Court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### III.

### A.    *Sufficiency of Service*

Defendants Commissioner Marshall, Former Superintendent Frame, Hudson, Bonds, Williams, Burton, and Mills contest the sufficiency of service of process pursuant to Rule 12(b)(5), [*see* ECF 27 at 5–7; ECF 28], inasmuch as they deny they were properly served via personal service as stated in the proofs of service filed by Plaintiff Doss.

"A defendant may move for dismissal of a plaintiff's claims for 'insufficient service of process' pursuant to Rule 12(b)(5)." *McCoy v. Norfolk S. Ry. Co.*, 858 F. Supp. 2d 639, 651

(S.D. W. Va. 2012) (quoting Fed. R. Civ. P. 12(b)(5)). "Plaintiff bears the burden of establishing the validity of service once that service is contested." *Id.* (citing *Homer v. Jones–Bey*, 415 F.3d 748, 754 (7th Cir. 2005) ("[I]t is the plaintiff who ordinarily bears the burden of demonstrating that the district court had personal jurisdiction over the parties, including valid service of process.")). "'A signed return of service constitutes *prima facie* evidence of valid service[.]'" *Farrar v. Cessna Aircraft Co.*, No. 2:18-CV-00461, 2022 WL 16554697, at *2 (S.D. W. Va. Oct. 31, 2022) (quoting *Dunn v. Nicholas Cnty.*, No. 2:14-25532, 2015 WL 3843777, at *2 (S.D. W. Va. June 22, 2015) (quoting *Relational, LLC v. Hodges*, 627 F.3d 668, 672 (7th Cir. 2010))). "And because a process server's affidavit of service is entitled to a presumption of correctness, it may be rebutted only by strong and convincing evidence . . . [such as] affidavits and other documentary evidence, as well as a deposition or oral testimony." *Id.* (cleaned up).

In support of their position that Defendants were properly served, Plaintiffs cite the proofs of service filed in this case, in which the process server -- Dustin Boggs -- attests that he personally served Defendants Marshall and Frame on May 27, 2025, Defendants Hudson, Williams, and Burton on May 28, 2025, and Defendants Mills and Bonds on May 29, 2025. [*See* ECF 7 (Proof of Service for Defendant Marshall); ECF 6 (Proof of Service for Defendant Frame); ECF 12 (Proof of Service for Defendant Hudson); ECF 18 (Proof of Service for Defendant Bonds); ECF 17 (Proof of Service for Defendant Williams); ECF 13 (Proof of Service for Defendant Burton); ECF 11 (Proof of Service for Defendant Mills)]. The proofs of service are entitled to a presumption of correctness, and Defendants have failed to rebut that presumption by presenting any evidence -- let alone "strong and convincing" evidence -- in rebuttal. *Farrar*, 2022 WL 16554697, at *2. Accordingly, Plaintiff Doss has met his burden of proving valid service of process.

**B.**     *Fourteenth Amendment Violations (Counts I and II)*

Plaintiff Doss alleges violations of the Fourteenth Amendment using the remedy provided by Congress in 42 U.S.C. § 1983 (Counts I and II). [ECF 4 ¶¶ 158–171, 172–186]. Plaintiff Doss claims Defendants failed to protect Mr. Doss and were deliberately indifferent to Mr. Doss's medical needs. [*See id.* ¶¶ 158–171, 172–186]. Specifically, Plaintiff Doss claims Defendants (1) "did nothing to prevent [Mr.] Doss from ingesting illegal narcotics while in . . . custody" of the WVDCR, [*id.* ¶ 160], and (2) "fail[ed] to provide properly qualified and certified healthcare personnel to evaluate, diagnose, and treat [Mr.] Doss," "failed to promptly provide necessary and reasonable medical treatment," and "fail[ed] to establish, monitor, and or/enforce policy directives and operational procedures." [*Id.* ¶¶ 174–176].

"The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments.'" *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment "has no application" where there has "been no formal adjudication of guilt against [an incarcerated person] at the time" he allegedly experienced deliberate indifference. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 400–01 (2015); *Short v. Hartman*, 87 F.4th 593, 609–10 (4th Cir. 2023). A pretrial detainee may, however, bring a deliberate indifference claim under the Due Process Clause of the Fourteenth Amendment. *Short*, 87 F.4th at 611 (citing *Kingsley*, 576 U.S. at 398). This is so because "[p]retrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001). And, in fact, courts should "be more solicitous of the Fourteenth Amendment claims of a pretrial detainee than

9

the Eighth Amendment claims of a post-conviction detainee, for 'pretrial detainees (unlike convicted prisoners) cannot be punished at all.'" *Short*, 87 F.4th at 610 (quoting *Kingsley*, 576 U.S. at 400). Our Court of Appeals has firmly established that "pretrial detainees [may] state Fourteenth Amendment claims for deliberate indifference to a serious risk of harm on the purely objective basis that the 'governmental action' they challenge is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Id.* at 611 (quoting *Kingsley*, 576 U.S. at 398).

### 1. Failure to Protect

Prison officials must "'take reasonable measures to guarantee the safety of . . . inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)); *see also Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). Nevertheless, "not . . . every injury suffered . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. In *Farmer*, the Supreme Court concluded, in order to establish an Eighth Amendment failure to protect claim, a prisoner must allege (1) an "objectively[] sufficiently serious" deprivation by alleging "conditions posing a substantial risk of serious harm," and (2) that the prison official exhibited a "sufficiently culpable state of mind." *Id.* (cleaned up).

Post *Kingsley* and *Short*, however, in order to establish a Fourteenth Amendment deliberate indifference claim premised upon a prison official's failure to protect a pretrial detainee from harm, the pretrial detainee must plead (1) an "objectively[] sufficiently serious" deprivation by alleging "conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, and (2) "that the 'governmental action' they challenge is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Short*, 87 F.4th

10

at 611 (quoting *Kingsley*, 576 U.S. at 398). Stated differently, regarding the second prong, the pretrial detainee must show "that the defendant's action or inaction was . . . 'objectively unreasonable,' . . . that is, the plaintiff must show that the defendant should have known of . . . [the conditions posing a substantial risk of serious harm and the attendant] risk[] and acted accordingly." *Id.* (quoting *Kingsley*, 576 U.S. at 397). "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (quoting *Farmer*, 511 U.S. at 836). It is not enough, however, "for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.* at 611–12.

The Complaint alleges "Defendants"[2] failed to protect Mr. Doss from the dangers of exposure to illegal drugs posing a substantial risk of harm to him. Specifically, the Complaint alleges the following in relation to the failure to protect claim:

> 9. . . . Commissioner Marshall was charged with ensuring that inmates housed in any West Virginia jail were not given access to nor had the ability to obtain contraband inside SRJ.
>
> . . .
>
> 11. . . . Commissioner Marshall was charged with ensuring that inmates housed in any West Virginia jail were adequately protected.
>
> . . .
>
> 14. Former Superintendent Frame was tasked by law with the care and custody of all detainees and prisoners incarcerated at SRJ. Former Superintendent Frame was vested with authority and responsibility for the safe staffing, administration, operation, and control of SRJ, including, but not limited to, the oversight of all SRJ employees, and the authority to promulgate, amend, and implement all policies and procedures within SRJ to ensure constitutional confinement and treatment of all

---

[2] It appears that Plaintiff Doss's use of the term "Defendants" in Count I refers to Defendants Commissioner Marshall, Former Superintendent Frame, and Defendant WVDCR employees. If Plaintiff Doss intended Count I to be alleged against Wexford and Wexford defendant employees, the intention is not clear from current pleading.

11

individuals incarcerated therein. See, *W. Va. Code § 15A-3-5.*

15. . . . Former Superintendent Frame was charged with ensuring that inmates housed in SRJ were not given access to nor had the ability to obtain contraband inside West Virginia's correctional facilities.

. . .

17. . . . Former Superintendent Frame was charged with ensuring that inmates housed in any West Virginia jail were adequately protected.

. . .

20. Based upon information and belief, at least thirteen (13) SRJ inmates died between January 1, 2021 and [March 3, 2023,] the date of [Mr.] Doss's death.

21. According to the Bureau of Justice Statistics, in 2019, there were 1,200 deaths in local jails nationwide, an average of twenty-four (24) per state.

. . .

54. [Mr.] Doss became incarcerated at SRJ on December 10, 2021, and was found unresponsive in his cell on March 3, 2023, having overdosed on an illegal narcotic substance that was brought into SRJ, in whole or in part, because of the wrongdoing of Defendants, and in violation of WVDCR's contraband policies.

55. During the medical intake evaluation of [Mr.] Doss in December of 2021, [Mr.] Doss admitted substance use and addiction disorder, which are noted in his medical record and were continually noted by Defendant Wexford's employees throughout his treatment and to the time of his death, for both heroin and benzodiazepines. His medical record contains diagnoses/problems associated with both heroin and benzodiazepine detoxification.[3]

56. On December 11, 2021, [Mr.] Doss became unresponsive while in booking at SRJ.

57. [Mr. Doss] was found lying on the floor of his cell with a bluish skin color; had shallow respirations; pinpoint, fixed pupils; and, an altered level of consciousness.

58. Chest compressions were performed; oxygen was applied; and, he received Narcan.

---

[3] Complaint paragraphs 55–66 mirror paragraphs 104–115 and paragraphs 73–75 mirror paragraphs 123–125. Because paragraphs 104–115 and 123–125 are duplicative, the Court does not include both.

12

59. EMS transported Mr. Doss to the Emergency Department at . . . BARH . . . .

60. The health care providers at BARH documented a chief complaint of overdose and a clinical impression of substance abuse/dependence.

. . .

62. Mr. Doss was placed on detoxification protocols upon admission to SRJ . . . .

63. [Mr. Doss's] medical record contain[ed] information that he had long-term substance abuse disorder . . . .

. . .

79. [Mr. Doss's] cause of death was determined to be Fentanyl/despropionyl fentanyl intoxication contributed to by hypertensive cardiovascular disease.

80. [Mr.] Doss was not ordered or dispensed Fentanyl or any other illegal substance as part of his medical care while incarcerated at SRJ.

81. [Mr.] Doss could have only ingested Fentanyl or other illegal narcotics if it was brought into SRJ as the result of the deliberate indifference of Defendants.

82. For an extended period of time prior to March 3, 2023, the Defendants knew and/or should have known that illegal narcotics had been brought into their facility by inmates, corrections staff, food/medical vendors, and/or others, and there was a serious risk of substantial harm to [Mr.] Doss because of the use of illegal narcotics, and Defendants did nothing to prevent [Mr.] Doss from ingesting illegal narcotics while in WVDCR custody. Defendants knew or should have known that other inmates had succumbed to overdose and/or toxicity due to the use of illegal narcotics, including Fentanyl, at SRJ prior to March 3, 2023.

83. Correctional Officers transport illegal narcotic narcotics into jails.

84. In December of 2019, a Correctional Officer who was employed at Central Regional Jail was sentenced for possession with intent to distribute methamphetamine after having received money from an inmate to secure the illegal substance.

85. In early 2019, full body scanners were installed in regional jails in West Virginia, including Southern Regional Jail.

. . .

93. WVDCR acknowledged that these scanners are a crucial tool for intercepting drugs, weapons and other contraband. Reducing contraband into prisons increases

safety for officers and other staff, as well as improves outcomes for inmates receiving substance abuse disorder treatment and recovery services. The [WVDCR] also said that reducing contraband via the scanners saves lives.

94. WVDCR also acknowledged that smuggled drugs have resulted in inmate overdose deaths and lengthy hospitalizations.

95. In July 2022, overdose deaths were determined to be the second leading cause of death in ten (10) West Virginia jails.

96. Reportedly, illegal narcotic narcotics are brought into the jails by visitors, in packages, in letters, by drones, by correctional officers, and by fake legal mail.

. . .

98. Based upon information and belief, typically, death occurs within one (1) to three (3) hours of an overdose and can be prevented if the overdose is recognized.

99. On January 23, 2023, undisclosed contraband and a handmade weapon were discovered at Southern Regional Jail.

100. On January 26, 2023, an inmate attempted to bring contraband in the form of heroin and meth into Southern Regional Jail.

101. It is well recognized that "contraband poses significant security risks and dangers inside detention facilities [. . .] "including drug overdoses." *West v. Murphy*, 771 F.3d 209, 212 (4th Cir. 2014) (internal citations omitted).

102. At all times relevant herein, the bringing of illegal narcotics and contraband into SRJ and other jail facilities were at epidemic levels because of the chronic understaffing of the facilities and lack of control over the screening process of persons entering the jail facilities and failure to enforce the facilities' own contraband policies.

103. The understaffing of Defendant's facilities has created an environment where even minimum standards for correctional facilities cannot be met and, in 2022, the Governor of West Virginia declared a state of emergency because the staffing shortages at the West Virginia jail facilities were creating conditions that violated the constitutional rights of persons incarcerated therein and created an environment where injury and death to incarcerated persons increased because of said understaffing.

. . .

137. The state of emergency declared by the Governor has been widely reported in the news media and West Virginia Division of Corrections and Rehabilitation

Former Commissioner, Brad Douglas, told a legislative committee in 2023, "There are 1,027 vacancies, which is 33% vacancy rate for officers and a 27% vacancy rate overall. That number, as you can see there on your chart, it's slowly getting worse."

138. Defendants violated WVDCR Policy Directive 308.00 Contraband Control & Preservation of Physical Evidence by failing to ensure appropriate security practices, including designation of secure areas, evidencing an ongoing system designed to detect contraband, preventing its introduction, and removing it when found.

139. WVDCR Policy Directive 308.00 provides that "Superintendents shall be responsible for enacting Operational Procedures and Post Orders to ensure compliance with this Policy Directive.["]

140. WVDCR Policy Directive 308.00(1) provides that "Contraband control is the responsibility of all employees." (emphasis in original).

141. As a result of the Defendants' deliberate indifference and violation of their own policies and procedures, [Mr.] Doss passed away at SRJ on March 3, 2023, because Defendants failed to protect [him].

. . .

153. The Defendants failed to oversee the actions/inactions of their employees, representatives and agents resulting in deliberately indifferent conduct occurring that affected [Mr.] Doss['s] placement within the jail and treatment and provision for safety during his incarceration, including permitting [Mr.] Doss to have access to illegal narcotics and failure to prevent the introduction of illegal narcotics into the inmate population in SRJ.

. . .

160. The Defendants knew and/or should have known that illegal narcotics had been brought into SRJ by inmates, corrections staff, food/medical vendors, and/or others, and there was a serious risk of substantial harm to [Mr.] Doss because of the use of illegal narcotics, and Defendants did nothing to prevent [Mr.] Doss from ingesting illegal narcotics while in WVDCR custody. Defendants knew or should have known that other inmates had succumbed to overdose and/or toxicity due to the use of illegal narcotics, including Fentanyl, at SRJ prior to March 3, 2023.

161. Defendants were deliberately indifferent to the health, safety, and other basic needs of the Plaintiff, as described hereinabove, by having actual knowledge of such conditions and deliberately taking no action to remedy them in a timely or appropriate manner.

[ECF 4 ¶¶ 9, 11, 14–15, 17, 20–21, 54–60, 62–63, 79–85, 93–96, 98–103, 137–141, 153, 160–161

(footnotes omitted)].

In summary, the foregoing allegations indicate: (1) Defendants were aware of Mr. Doss's substance use disorder, [*id.* ¶¶ 45–60, 62–63], (2) there was a widespread presence of drugs in SRJ, [*id.* ¶¶ 84–85, 93–96, 99–100, 102], (3) drugs can enter facilities by way of "inmates, corrections staff, food/medical vendors, and/or others," including "by visitors, in packages, in letters, [and] by drones," [*id.* ¶¶ 83, 96], (4) the "second leading cause of death" in West Virginia's regional jails is overdose, [*id.* ¶ 95], and (5) Defendants had actual knowledge of the condition posing a substantial risk of serious harm (i.e., the prevalence of drugs) -- evidenced by the 2019 decision to install full body scanners intended to curb the introduction of contraband, [*id.* ¶¶ 82, 85, 93–96].

Regarding the first prong, the risk of harm must be "sufficiently serious" or "excessive." *Farmer*, 511 U.S. at 837; *see id.* at 843 ("The question . . . is whether prison officials. . . exposed a prisoner to a sufficiently substantial risk of serious damage to his future health[.]") (cleaned up). Plaintiff Doss has pled "overdose deaths were determined to be the second leading cause of death in ten (10) West Virginia jails" in 2022. [ECF 4 ¶ 96]. Accordingly, the Court is satisfied that Plaintiff Doss has plausibly alleged a "serious," "excessive," or "substantial" risk of serious harm as a result of the dangers of exposure to drugs. *Farmer*, 511 U.S. at 837.

Regarding the second prong, (1) the challenged governmental action must not be "'rationally related to a legitimate nonpunitive governmental purpose' or [must be] 'excessive in relation to that purpose,'" *Short*, 87 F.4th at 611 (quoting *Kingsley*, 576 U.S. at 398), or (2) the challenged "inaction [must be] . . . 'objectively unreasonable.'" *Id.* (quoting *Kingsley*, 576 U.S. at 397). In order to establish objective unreasonableness, "it is enough that the plaintiff show that the defendant . . . failed to act 'in the face of an unjustifiably high risk of harm that is either known or

so obvious that it should be known.'" *Id.* (quoting *Farmer*, 511 U.S. at 836). Plaintiff Doss has

plausibly alleged that Defendants had actual knowledge of the prevalence of illegal drugs, which

is evidenced by the 2019 installation of full body scanners intended to curb the introduction of

contraband. [*Id.* ¶¶ 82, 85, 93–96]. Moreover, as Plaintiff Doss has alleged the second leading

cause of death of inmates in West Virginia jails is drug overdose, the Court is satisfied that the risk

of harm caused by the failure to curb introduction of illegal drugs is unjustifiably high. Critically,

however, Plaintiff Doss has failed to plausibly allege sufficient factual content to support the

allegation that Defendants failed to act to remedy the condition posing a substantial risk of serious

harm. Plaintiff Doss alleges "Defendants did nothing to prevent [Mr.] Doss from ingesting illegal

narcotics." [*Id.* ¶¶ 82, 160]. However, the allegation is unsupported by factual allegations and is a

legal conclusion not entitled to the assumption of truth. Without further factual allegations to

support it, the allegation is implausible. *See Iqbal*, 556 U.S. at 664 ("While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations."). Therefore,

Plaintiff Doss has failed to plausibly allege objective unreasonableness.

Accordingly, the Complaint fails to plausibly allege that Defendants Marshall,

Frame, and Defendant WVDCR employees failed to protect Mr. Doss from the dangers of

exposure to illegal drugs posing a substantial risk of harm to Mr. Doss.

### 2. Deliberate Indifference to Serious Medical Need

To state a claim for deliberate indifference to a medical need, a pretrial detainee

must plead the following:

> (1) they had a medical condition or injury that posed a substantial risk of serious
> harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act
> to appropriately address the risk that the condition posed; (3) the defendant knew
> or should have known (a) that the detainee had that condition and (b) that the
> defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as
> a result, the detainee was harmed.

*Short*, 87 F.4th at 611.

The medical condition must be "serious" -- that is "diagnosed by a physician as mandating treatment" or otherwise "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)); *Depaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). A pretrial detainee need not "show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Short*, 87 F.4th at 611; *see also Jenkins v. Woodard*, 109 F.4th 242, 249 n.3 (4th Cir. 2024). Rather, "it is sufficient that the plaintiff show that . . . the defendant should have known of that condition and that risk, and acted [or failed to act] accordingly." *Short*, 87 F.4th at 611. It is not enough, however, for a plaintiff to only show the defendant "negligently or accidentally failed to do right by the detainee." *Id.* at 611–12; *see also Kingsley*, 576 U.S. at 396.

The Complaint alleges "Defendants"[4] were deliberately indifferent to Mr. Doss'[s] serious medical needs when they "fail[ed] to provide properly qualified and certified healthcare personnel to evaluate, diagnose, and treat [Mr.] Doss," "failed to promptly provide necessary and reasonable medical treatment," and "fail[ed] to establish, monitor, and or/enforce policy directives and operational procedures." [*Id.* ¶¶ 174–176]. Specifically, in addition to relevant allegations above, the Complaint further alleges the following against Commissioner Marshall, Former Superintendent Frame, and Defendant WVDCR employees in relation to the failure to protect

---

[4] Count II appears to be alleged against all Defendants. However, inasmuch as Wexford and Wexford defendant employees did not file motions to dismiss, the Court presently considers the sufficiency of Count II only as it relates to Commissioner Marshall, Former Superintendent Frame, and Defendant WVDCR employees.

claim:

64. Based upon information and belief, [Mr.] Doss requested medical care for complaints of headaches and that his blood pressure felt high on November 8, 2022.

. . .

66. [Mr.] Doss had a diagnosis of hypertension prior to entering SRJ.

. . .

69. [Mr.] Doss was scheduled to undergo an EKG on January 19, 2023.

70. Based upon information and belief, the January 19, 2023 scheduled EKG was not performed.

71. [Mr.] Doss was scheduled to undergo an EKG on February 1, 2023, approximately one (1) month prior to his death.

72. Based upon information and belief, the February 1, 2023 EKG was never completed.

73. Based upon information and belief, [Mr.] Doss did not receive any medical monitoring for his high blood pressure between January 19, 2023 and the time of his death.

74. Based upon information and belief, although [Mr.] Doss was scheduled to have his blood pressure taken weekly, his blood pressure was last checked on January 19, 2023, approximately six (6) weeks before his death.

75. Based upon information and belief, [Mr.] Doss's blood pressure readings that were completed were elevated beginning on April 22, 2022 through January 19, 2023.

. . .

104. During the medical intake evaluation of [Mr.] Doss in December of 2021, [Mr.] Doss admitted substance use and addiction disorder, which are noted in his medical record and were continually noted by Defendant Wexford's employees throughout his treatment and to the time of his death, for both heroin and benzodiazepines. His medical record contains diagnoses/problems associated with both heroin and benzodiazepine detoxification.

. . .

116. [Mr.] Doss was scheduled to undergo an EKG on November 23, 2022.

117. Based upon information and belief, the November 23, 2022 scheduled EKG was not performed.

118. Herbert Wayne Doss was scheduled to undergo an EKG on January 17, 2023.

119. Based upon information and belief, the January 17, 2023 scheduled EKG was not performed.

. . .

122. Mr. Doss's blood pressure was elevated on January 2, 2023 as noted by the records for an Emergency Department visit to BARH for physical injuries.

. . .

126. At approximately 5:10 AM on March 3, 2023, inmates sharing B-7-7 with [Mr.] Doss were awakened when Mr. Doss fell from his bed slab onto the floor. Upon information and belief, a fellow inmate attempted to gain medical assistance immediately by pressing the call button inside B-7-7, but that call button did not work, and several minutes were lost as a result. Unable to awaken [Mr.] Doss, inmates threw themselves against the cell door of B-7-7, causing it to open, and made a call on the pod call button seeking assistance. Upon information and belief, at approximately 5:13 AM on March 3, 2023, an inmate successfully contacted the tower via the B7 pod call button to report Mr. Doss was in a medical emergency. Upon information and belief, at approximately 5:15 AM, Defendants Cpl. Blevins, Cpt. Burton, CO Bonds, CO Lagowski, and Cpl. Mills enter B-7. Upon information and belief, sometime thereafter, [Defendant] Wexford employees . . . enter B-7 accompanied by Sgt. Williams. Upon information and belief, more than seven minutes after the call from an inmate and more than 10 minutes after a fellow inmate attempted to make a call to the tower, CO Lagowski was dispatched to retrieve necessary medical equipment. Thereafter, CO Allen and Wexford employoyez Beth Waugh arrived with a stretcher.

. . .

130. Upon information and belief, WVDOCR employees initiated CPR shortly after entering B-7-7, and those resuscitation efforts were then assumed by Wexford employees once they reached Cell B-7-7.

131. Upon information and belief, the AED, though located on the crash cart, was left on the crash cart by medical personnel and not retrieved until questions were raised as to its absence by WVDCR employee Burton.

132. That several golden minutes of opportunity to preserve the life of [Mr.] Doss were lost through a combination of a non-working call button in B-7-7, a medical

response which fell below all applicable standards of care, and was recklessly indifferent toward the health and well-being of [Mr.] Doss, which included failures to administer oxygen and failure to attempt utilization of an AED during early stages of the onset of this medical emergency.

133. [Mr.] Doss was taken by ambulance from SRJ to Beckley Appalachian Regional Hospital, where he was pronounced dead on March 3, 2023 at 6:21 AM. Subsequent thereto, his cause of death was determined to be Fentanyl/despropionyl fentanyl intoxication contributed to by hypertensive cardiovascular disease.

[ECF 4 ¶¶ 64, 66, 69–75, 104, 116–119, 122, 126, 130–133 (footnotes omitted)].

Free from the constraints of the subjective showing required under the Eighth Amendment, the Complaint nonetheless fails to plead a plausible Fourteenth Amendment deliberate indifference to medical need claim against Defendants Commissioner Marshall, Former Superintendent Frame, and Defendant WVDCR employees.

Regarding the first prong, Plaintiff Doss alleges Mr. Doss suffered from hypertension as well as "substance use and addiction disorder," which -- considering the prevalence of illegal drugs in SRJ -- constituted an objectively serious medical condition posing a substantial risk of serious harm. [ECF 4 ¶¶ 55, 104]. Plaintiff Doss alleges Mr. Doss's substance use and addiction disorder were "noted in his medical record and were continually noted by Defendant Wexford's employees throughout his treatment and to the time of his death." [*Id.* ¶ 55]. Yet, "despite his medical record containing information that he had long-term substance abuse disorder and, had indeed overdosed previously while incarcerated at SRJ, he was not appropriately drug screened or monitored for his Opioid Use Disorder by Wexford or the Wexford employee defendants." [*Id.* ¶¶ 63, 142 ("Wexford Defendants failed to treat, monitor or address [Mr.] Doss'[s] admitted drug addiction, failed to screen him between June of 2022 and March 3, 2023; [and] failed to monitor him for potential drug use.")]. Further, although he was prescribed various medication to treat his hypertension, he did not undergo two EKGs scheduled in the two months

prior to his death on January 19, 2023, or on February 1, 2023, and "did not receive any medical monitoring for his high blood pressure between January 19, 2023 and the time of his death" on March 3, 2023. [*Id.* ¶¶ 64–76, 79, 142 ("Wexford Defendants failed to . . . monitor his blood pressure and perform two scheduled EKG's in the two months prior to his death.")]. Finally, Plaintiff Doss alleges "Wexford . . . failed to provide appropriately qualified and certified Healthcare Personnel such that no registered nurse or other LPN supervisor or director was available to respond to [Mr.] Doss'[s] medical emergency, with a resulting confusion among the LPNs and Medical Assistant who did respond, a delay in administration of oxygen in critical minutes, a delay in the provision of appropriate medical equipment, a delay in administration of AED, and actions of LPNS and a Medical Assistant without RN or greater supervision." [*Id.* ¶ 142].

The foregoing may be sufficient to establish Mr. Doss's hypertension and substance use disorder. However, those conditions appear to be only half of the claimed objectively serious medical conditions. Assuming that Mr. Doss's high blood pressure and substance use disorder coupled with the prevalence of illegal drugs in SRJ constituted an objectively serious medical condition posing a substantial risk of serious harm -- and assuming the third and fourth prongs are plausibly alleged -- the Complaint nonetheless fails to allege sufficient factual content to support the second prong. The allegations against Defendants Commissioner Marshall, Former Superintendent Frame, and WVDCR employees are extraordinarily sparse. [*See* ECF 25 ("Plaintiff does not even state that . . . Defendants [Bonds, Lagowski, Williams, Burton, Mills, or Allen] were on duty in the facility when the alleged illegal narcotics were brought onto the premises and/or ingested by . . . Plaintiff [Doss].")]. As Defendants Bonds, Lagowski, Williams, Burton, Mills, and Allen urge, the only allegations against them are: (1) Defendants Bonds, Lagowski, Burton, and

Mills entered Plaintiff Doss's cell five minutes after "Mr. Doss fell from his bed onto the floor" as a result of his medical incident, [ECF 4 ¶ 126], (2) Defendants "initiated CPR shortly after entering," [*id.* ¶ 130], (3) Defendant Williams entered the cell with a number of Defendant Wexford employees, who assumed "resuscitation efforts," [*id.*], (3) Defendant Lagowski was dispatched to retrieve necessary medical equipment seven minutes after the medical incident began, [*id.*], (4) Defendant Allen arrived with a stretcher, [*id.*], and (5) questions were raised about the absence of an AED by Defendant Burton, [*see id.* ¶ 131].

There are no allegations that Defendants Commissioner Marshall, Former Superintendent Frame, and Defendant WVDCR employees either intentionally, knowingly, *or even recklessly* failed to act to appropriately address the risk that the alleged condition posed. Plaintiff Doss alleges: (1) "WVDCR Policy Directive 308.00(1) provides that 'Contraband control is the responsibility of all employees,'" (2) "WVDCR Policy Directive 308.00 provides that 'Superintendents shall be responsible for enacting Operational Procedures and Post Orders to ensure compliance with this Policy Directive,'" (3) "Defendants violated WVDCR Policy Directive 308.00 Contraband Control & Preservation of Physical Evidence by failing to ensure appropriate security practices, including designation of secure areas, evidencing an ongoing system designed to detect contraband, preventing its introduction, and removing it when found," and (4) "Defendants did nothing to prevent [Mr.] Doss from ingesting illegal narcotics," [*Id.* ¶¶ 82, 138–140, 160]. However, without further factual allegations in support, the allegations do not plausibly allege deliberate indifference to serious medical needs. *See Iqbal*, 556 U.S. at 664 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Accordingly, Plaintiff Doss has failed to plausibly allege a claim for deliberate

indifference to Mr. Doss's serious medical needs.

### 3. Supervisory Liability

While Plaintiff Doss may proceed on a theory of supervisory liability in regard to Defendants Commissioner Marshall and Former Superintendent Frame to support his failure to protect or deliberate indifference to serious medical needs claims, "he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (cleaned up). To state a supervisory liability claim, a plaintiff must allege:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

However, as previously stated, the lack of factual pleading dooms his ability to allege a supervisory liability claim regarding Count I or Count II. There is insufficient factual content to support either (1) that Defendants failed to act to remediate the unjustifiably high risk of harm, or (2) that Defendants recklessly failed to act to appropriately address the risk that Mr. Doss's alleged medical conditions posed. The Complaint contains no allegations Defendants Commissioner Marshall and Former Superintendent Frame knew of, much less condoned, any alleged failures to address the introduction of and prevalence of illegal drugs in SRJ. The Complaint contains pleadings consistent with constructive knowledge of the presence of drugs because it contains information regarding the efforts to combat the prevalence of drugs, including allegations that "full body scanners were installed" to reduce contraband, [ECF 4 ¶¶ 85, 93], and

instances of introduction and discovery of contraband within West Virginia regional jails, generally. [*Id.* ¶¶ 84, 99–100]. However, other than the allegation that Defendants "did nothing to prevent [Mr.] Doss from ingesting illegal narcotics while in WVDCR custody," there are no allegations supporting that the alleged lack of response by Defendants Commissioner Marshall and Former Superintendent Frame amounted to deliberate indifference or tacit authorization. *See Stroud*, 13 F.3d at 799. Without any factual allegations to support the alleged inaction by the supervisory Defendants, an affirmative causal link between the alleged inaction and alleged harm suffered is also nonexistent. Consequently, the foregoing allegations are insufficient to support Plaintiff Doss's claims of supervisory liability premised upon the supervisors' failure to protect or deliberate indifference to medical needs.

Accordingly, the Court **GRANTS** the motions to dismiss, and Counts I and II are **DISMISSED** without prejudice to repleading[5] in accordance with the *Federal Rules of Civil Procedure*. [**ECF 26**, **ECF 24**].

---

[5] Moving Defendants highlight that the Complaint refers categorically to "Defendants" rather than stating with "particularity" the overt acts of each Defendant. [ECF 27 at 2, 7; ECF 25 at 5 ("Plaintiff states no specific actions or inactions with any particularity taken by any of these Defendants in regard to how illegal narcotics were brought into [SRJ].")]. First, the Court notes that while Rule 9(b) requires pleading with particularity, Rule 8(a)(2) requires only that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'liability [pursuant to 42 U.S.C. § 1983] will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights.'" *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (cleaned up)). While our Court of Appeals has refused to "categorically foreclose the possibility that a complaint that makes allegations collectively against 'Defendants' may sometimes survive a motion to dismiss,'" *Langford*, 62 F.4th at 126 (quoting *Iqbal*, 556 U.S. at 679), the Court cautions Plaintiff Doss, upon repleading, to provide more factual support regarding Defendants Commissioner Marshall, Former Superintendent Frame, and Defendant WVDCR employees' alleged failures to act. The additional pleadings must, at a minimum, "allow the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged . . . [and allow for] more than a sheer possibility that [each] defendant has acted unlawfully." *Iqbal*, 556 U.S. at 663.

### C. State Law Negligence Claims (Counts III, V, VI, VII, and VIII)

All moving Defendants seek dismissal of Mr. Doss's claim for negligence (Count III) based on (1) insufficiency, and (2) qualified immunity. [ECF 26; ECF 24]. Defendant Frame further seeks dismissal of Mr. Doss's claims against him for Negligent Hiring (Count V), Negligent Supervision and Training (Count VI), Negligent Retention (Count VII), and Waiver of Governmental Immunity and Punitive Damages (Count VIII) based on (1) insufficiency, and (2) qualified immunity. [ECF 26].

Under West Virginia law, a public officer acting within the scope of employment is immune from suit for actions taken in any discretionary function. *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 505, 766 S.E.2d 751, 764 (2014). West Virginia treats the general functions of state correctional officers, along with the broader duties of employee training, supervision, and retention, as discretionary. *Id.* at 509, 766 S.E.2d at 768 ("[W]e find that D.H.'s general functions as a correctional officer, like most law enforcement officers, are broadly characterized as discretionary, requiring the use of his discretionary judgments and decisions."). However, immunity does not attach to discretionary actions or omissions if made "in violation of a clearly established statutory or constitutional rights or laws of which a reasonable person would have known, or [which] are otherwise fraudulent, malicious, or oppressive." *Id.* at 507.

In *West Virginia Dep't of Hum. Servs. v. David B., Next Friend of J.B.*, the Supreme Court of Appeals of West Virginia summarized the governing standards for the state brand of qualified immunity:

> West Virginia applies two standards to determine if a state agency, agent, official, or employee is protected by qualified immunity. First, "[a] litigant may pierce the shield of qualified immunity by showing that a government official has violated a clearly established statutory or constitutional right." Second, a litigant may pierce the shield of qualified immunity by showing that the government official's, employee's, or agent's acts or omissions were *fraudulent, malicious, or oppressive*.

>The first test is based upon federal law, while the second is in addition to the federal law-based test.

No. 23-275, 2024 WL 4784904, at *5 (W. Va. Nov. 14, 2024) (emphasis added) (cleaned up); *see also* Syl. Pt. 5, *Maston v. Wagner*, 236 W. Va. 488, 492, 781 S.E.2d 936, 940 (2015); Syl. Pt. 5, in part, *W. Va. Div. of Nat. Res. v. Dawson*, 242 W. Va. 176, 190, 832 S.E.2d 102, 116 (2019).

In view of the pleading deficiencies earlier mentioned, Plaintiff Doss has not presently shown (1) that particular Defendants violated a clearly established statutory or constitutional right or (2) pled any acts or omissions by the subject Defendants that were fraudulent, malicious, or oppressive. Defendants are thus entitled to qualified immunity for the alleged acts and omissions related to Plaintiff Doss's negligence claims. *See W. Va. Dep't of Hum. Servs. v. A.R.*, 249 W. Va. 590, 600, 900 S.E.2d 16, 26 (2024) (finding plaintiff's general allegation of defendant's failure to follow policies and protocols warranted dismissal for qualified immunity purposes inasmuch as it failed to show defendant "did or failed to do something that it would have reasonably understood to be unlawful"). Inasmuch as Counts III, V, VI, VII, and VIII are barred by qualified immunity, the Court need not address the sufficiency of the pleading as to those claims.

The Court **GRANTS** the motions to dismiss and Counts III, V, VI, VII, and VIII are **DISMISSED** without prejudice to repleading in accordance with the *Federal Rules of Civil Procedure*. [**ECF 26**; **ECF 24**].

## IV.

Based upon the foregoing discussion, the Court **GRANTS** the motions to dismiss [**ECF 26; ECF 24**] and **DISMISSES WITHOUT PREJUDICE** all claims against Moving Defendants. Plaintiff Doss may replead the dismissed claims on or before January 30, 2026.

The Clerk is **DIRECTED** to transmit a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER:  January 15, 2026

Frank W. Volk
Chief United States District Judge